Please proceed, Counsel. May it please the Court, good morning. My name is Sarah Schlosser, Petitioner for Petitioner Badrat Simonyan. I want to focus on three key issues in this case. I'd also like to reserve a couple minutes for rebuttal. First, this is a case where Mr. Simonyan, also an Armenian alien, was granted withholding of deportation but denied asylum. In this case, we had Mr. Simonyan, who speaks no English whatsoever, appearing without counsel in front of the immigration judge. And here, the immigration judge provided no notice that there would be any kind of discretionary decision about the decision about granting asylum. The only notice that the judge provided was that he needed to prove eligibility for statutory asylum, and he did that. In fact, he did that so well that the judge found on page 74 of the record that he had established that he was not eligible for statutory asylum. He had not only a well-founded fear of persecution required for eligibility of asylum, but he had met the higher burden of proof for withholding. And the judge found his testimony to be consistent and credible. What kind of guidance factors should he have given in bearing on discretionary asylum? Well, yes. Okay. It actually has come up quite a bit in this circuit. In a number of cases cited in the briefs, specifically in Jacinto, in Andriasian, and in Eggman, the Court has been very specific in saying that when you're talking about a pro se alien who doesn't speak the language, the judge has a duty to assist that alien in identifying each element that he has to prove and the types of evidence that would be relevant to that claim, to proving that claim. Now, is this your due process argument? Is this your due process argument? It is both due process and an abuse of discretion, because the judge has a duty to assist the and failed to do so, and that was an abuse of discretion, because it is related to his discretionary determination. And because the judge failed to explain each of the relevant discretionary factors and by what means he could prove his claims, this prejudiced Mr. Simonian's ability to both comprehend the proceedings and also to make an appropriate choice regarding assistance of counsel. Now, the judge was required to provide that guidance in order to make a reasonable inquiry into the waiver of counsel issue. But without this information ---- So isn't the waiver of counsel issue one of your due process issues? The waiver of counsel issue is one of my due process arguments. Yes. I'm not sure those have ---- that those are properly before us. Well, I would ---- Were those included in the petition for review? In the petition to the BIA? No, they were not. The petition to the BIA, however, I believe this Court has jurisdiction for four different reasons. The ---- first of all, the petition to the BIA was also pro se. It was pro se in part because the instructions given to Mr. Simonian regarding the right to counsel by the immigration judge, the judge told him on page 82 of the record, I do not want you to be under the mistaken belief that you can return later with an ---- hire an attorney later. He told him, if you proceed on your own, that if you change your mind late and get an attorney, it might be too late. Then when he gave the instructions regarding the right to appeal on page 141 of the record, the judge told him, if you think my decision is wrong in not granting you asylum as a matter of discretion, you can take appeal of that decision. So the instructions that my client was given were that since he had ---- and make no mistake, under Jacinto, this Court has said that when you're talking about someone who doesn't speak the language in an immigration proceeding, you need to look at the record from the perspective of a reasonable person who doesn't understand. You're arguing a fundamental failure of due process under, like, the Seventh Circuit, CASA. CASA, yes. And not under the Ninth Circuit barren rule of procedural. Actually, I do have Ninth Circuit arguments as well. Under Mammouzian, the pro se aliens appeal has to be liberally construed. And in addition, the Court ---- What in that, counsel? Yes. What in that appeal could be liberally construed as a due process claim? Actually, that's my second point. And also under Mammouzian, this Court can exercise jurisdiction where a failure to do so would result in a manifest injustice. Now, this man was given very improper instructions regarding his ---- regarding what he needed to prove, what ---- and what his right to counsel really was, as well as what he could appeal. How far should an I.J. go on right to counsel? I mean, we're not dealing with a Sixth Amendment situation here where you go through ---- the district judges have to go through hoops to let a pro se know that he better not try the criminal case himself. But he did give them some advice. Maybe he should have a lawyer or he could have a lawyer. And there's a regulation that requires that. How much further can a reasonable I.J. go? Well, here's ---- under normal circumstances, that would have been reasonable. However, in this case ---- this case is not normal circumstances in that there was no real notice regarding what Mr. ---- under multiple cases, no explanation of what Mr. Simonian needed to do. Well, but the immigration judge can't go, like, of counsel and it's ---- No. No. And that's not what I'm suggesting. What I'm suggesting is that the immigration judge has a duty to assist the pro se alien, as stated in Jacinto and Eggman and Andreessen, in identifying the elements of the claims that he needs to prove, including the fact that there's a discretionary determination and what discretionary factors will be considered. And then, as stated in Eggman, he has a duty to help the ---- to assist the pro se alien in identifying the types of evidence that can ---- may be relevant to proving those claims. That did not happen here. And under Jacinto, where that doesn't happen, it ---- the Court has said that by not providing that information, you have denied him the ability to comprehend the proceedings in a way that will allow him to make an appropriate choice regarding counsel. So you can give ---- you can ask, are you sure you want to waive counsel all you want, but until you tell him, and here's what you need to do to get the ---- to make that decision, it's a meaningless inquiry. Well, now, without a lawyer, this man proved that he was entitled to every relief that he sought under the law and only failed in achieving discretionary relief. A lawyer couldn't have done better except to require that this man tell the truth. That is ---- And if he had told the truth, lawyer or no lawyer, he's home free, right? No. No? No. I don't think that's the case here. First of all, the inconsistency that the Court found is not a real inconsistency. When you take into ---- when you look at the record from the perspective of a non-English-speaking immigrant who's pro se, as you must. The only reason he was denied relief is that the ---- is the I.J. thought he was lying on the witness stand, right? No, that's not ---- that's not ---- that's not ---- under the decision, the I.J. lists a couple of different things. Most of them are pure speculation. But the question is they all led to an adverse credibility determination. The things he listed resulted in him denying asylum on a discretionary basis because of an adverse credibility determination. Nothing else. Okay. Except for one thing. The judge didn't find him to be not credible. The judge found him to be consistent and credible. Counsel. Why did the judge deny asylum in his discretion? He did not. What was the reason? He had three reasons. First, he said that he found that based on ---- without ---- now, first of all. Would you just answer the question? Okay. The virus was resettled in one of the foreign countries. In foreign countries he had never visited in. Which is a little ridiculous. And there was no evidence that he had ever visited. Okay. So, okay. What else? Then he said that he must have had knowledge of asylum laws in another country, written in another language, before he escaped from persecution. Okay. What else? And then he said that he found an inconsistency based on the statements that they ---- Okay. He found an inconsistency regarding the ---- what Mr. Simonian told to the American consulate to get his visa in order to ---- Okay. So that's what Judge Levy is asking you about. Okay. Well, and if I may, isn't it more than that? It's not only the failure to say what ---- to tell the American authorities in the foreign country, but it was what he testified to in the hearing. He found he was inconsistent and lacking in credibility because of the contradictions in the very proceedings that are occurring in the U.S. Now, I think that what happened here, and you correct me if I'm wrong, this I.J. found this man to be a liar. And in spite of that, he found that he was at great risk and likely to be tortured if returned. Now, all that a lawyer could have done for this man is be sure he told the truth. I would still disagree with that. All right. One of the reasons I would disagree with that is that the inconsistency that the court found when you look at it from the perspective of someone who is obviously confused and there's examples of confusion throughout this record and particularly with respect to that specific inquiry by both the immigration attorney and the immigration judge. During both of those examinations, Mr. Simonian expressed confusion about what interview he was talking about and what was going on. And, in fact, the I.J. at one point recognized that he was confused and said, did you ever tell them about your problems in Armenia? And then clarified, this is the American consulate official. Now, nobody went back and clarified. Now, Mr. Simonian, did you understand when you were talking, when you were answering the immigration attorney's questions that you were talking about this same American consulate official? There's no opportunity, was no opportunity provided to him to recognize that he was talking about a credibility issue. Well, beyond that, I don't think the I.J. faulted him for not telling when he was trying to get a visa that he was coming to the United States for asylum, which the cases reflect you don't have to or it's a minor thing. And it appears that he thought he was credible, but he faulted him for not telling them at the time he got the visa that he was trying to get asylum. And the I.J. didn't waive the positive factors, the family, the fact that they had no criminal record and so forth. Correct. Well, all right. All right. Counsel, you have a seat at your time. We will give you a minute for rebuttal. Thank you. May it please the Court. Andrea Tisi on behalf of the Respondent, Mr. Gonzales, Attorney General Gonzales. Not surprisingly, based on the two hearings that you've already heard this morning, the first argument that the government is going to make is that Mr. Gonzales has not been able to do the administrative remedies in this case as he's required to do in the Ninth Circuit under Rojas Garcia. This Court may not see it as a fact finder in the first instance under the new law. Well, how about more fundamentally? Did the I.J. sufficiently apprise him of the fact that he had the right to an attorney and that, you know, this is not an easy thing to do, it's a treacherous thing to represent yourself? Did he do that adequately or just give it a lick of the dab? I believe that the immigration judge in this case gave adequate notice to Mr. Simonian with regard to his right to counsel and not only gave adequate notice but received several knowing and voluntary waivers of that right. He gave him a list of organizations, of pro bono organizations, asked if he wanted to go forward on his own. These are all in the supplementary brief at 19 and 20 and in the administrative record at 81 and 92. He finally accepted the waiver of Mr. Simonian. Then he warned him of the consequences of not hiring counsel if he went forward on his own, told him he could change his mind again if he wanted to, and then gave him 10 months essentially to prepare his case during which time if Mr. Simonian had ever exhibited any interest in having an attorney, which he never did, he could have hired an attorney. The immigration judge then goes back again in the 2003 hearing and addresses the counsel issue again, says it in a more cursory manner than he had done before but says, I see you're here on your own. Are you going to bring an attorney? And Mr. Simonian is focused on other things, asks for continuance, that sort of thing, change of venue. And finally the hearing moves on. But I would like to distinguish the four right to counsel cases that Mr. Simonian's now counsel cited. I'd like to distinguish them from this case. In Baltazar-Alcazar, an entire law firm was banned to the petitioner. That's not true here. In Castro-Orion, the petitioner was only asked once when he wanted to go forward without counsel. That's certainly not true here. This immigration judge addressed it several times. Unlike in Tawadris, this petitioner didn't have to go forward, say, two hours after counsel had withdrawn. And unlike in Bawat, this person didn't only have five days to get counsel. They didn't have to move forward. Mr. Simonian never had any interest in hiring counsel. Well, counsel, you can't say what his interest was, can you? Well, he never expressed it. He never verbalized it. And he gave knowing waivers to the ‑‑ knowing and voluntary waivers to the judge in this case. The government would also posit that even if he had been denied right to counsel, which we don't believe is true here, there isn't any prejudice in this case. As earlier questioning indicated, there's very little that a judge could have apprised Mr. Simonian of that Mr. Simonian wasn't already aware of himself. He's sophisticated enough to put together an asylum claim. Obviously, he's a medical doctor, head of a unit in Armenia, a prison unit in Armenia. He appeared at the hearings. He filled out the original claim. The inconsistencies that he engaged in were obvious, and the immigration judge focused on them. It's not, you know, it's not a good idea to lie to government officials on this. Well, you're talking about when he lied to get a visa to come to the country. You know, there are a lot of ‑‑ very few people go to the American consulate and say, I'm going to go to the United States to seek asylum. They all say, I'm going to the United States out of business or work or whatever it is. And that's a minor, it's not a major type of discrepancy where you actually engage in a fraud, say I'm Jones, when you're really Smith. And the cases play it down. It's not a major thing. This guy, Jay, thought it was a horrendous thing that he didn't tell when he got the visa that I'm going to the United States to seek asylum. I don't think it weighs quite that heavily. He also found problems with him not settling in third countries where he passed through, and you could say that's exactly what he did. He just passed through a number of these countries and didn't seek asylum. Well, just about everyone that comes to the United States passes through other countries. That's not something ‑‑ and just passing through is not something that you could hold against someone for seeking asylum here. I thought it was rather nitpicky of him to relate those as reasons, discretionary reasons for not granting asylum. Well, the immigration judge, I think, focused on five things in articulating the on balance. Mr. Simonian didn't deserve a discretionary grant of asylum. He focused first and foremost on the false testimony that was given to the INS attorney before the court with regard to his visit to the American Embassy in Yerevan. And specifically, what was that false testimony? That he didn't tell him that he was going to the United States for asylum. He made four misrepresentations. He foisted four material misrepresentations on the court under the Del Mundo standard. The misrepresentations were that he just asked for a tourist visa, that he was arrested. He said he was arrested. He said he feared for his safety, and he addressed the issue of whether he planned to return to Armenia. And he basically misrepresented, according to the immigration judge, the interaction as would logically have happened if he had mentioned that he was arrested. None of these were fraud where he claimed something that misrepresented himself or he misrepresented it for reasons of trying to get to the United States. All right. I understand your argument there. Yeah. The immigration judge also mentioned several other. This court has pointed out that perhaps it's not a serious adverse factor, but certainly an adverse factor is that he circumvented orderly immigration procedures, that he had no ties to the United States other than a sort of distant tie to new in-laws he had just acquired. He had an adequate opportunity to seek refugee status elsewhere. Like where? Like where did he have not? He passed through these countries like he passed through on an airplane. The immigration judge made a broader point just with regard to the fact that there are many other free countries in the world and that between Armenia and the United States. They say that for anyone that's seeking asylum. They could go to France, Canada, Germany. You know, that to me seems to be the height of hypocrisy. Well, the government would contend that under Pula that's a legitimate adverse factor. It is an adverse factor, but it counts for practically nothing. Just like not going to the American consulate and saying, I want to get out of Armenia so I can take asylum in the United States. It's not true, but it's not a fraud. Well, the immigration judge then focused on a fifth factor, which is that he was receiving withholding and wouldn't have to return to Armenia and would never face persecution there again. Yes, but he didn't consider the positive factors either. The man was a professional man. He was an educated man. He had no criminal record. He completely overlooked the fact that he had a wife in Greddy withholding, which would not let the lady come to – would not let the lady obtain entry. Yes. And he overlooked those factors completely. He did overlook those factors, and the government would contend that those are procedural errors that could have been raised before the Board of Immigration Appeals but weren't sufficiently briefed before the board to – for the board to be able to weigh in on and redress those procedural errors that the immigration judge engaged in. Do you agree with my bald assertion that if this man had told the truth, he'd have been okay? I don't quite know how to answer that, Your Honor. I mean, the immigration judge did focus on the fact that he lied before the court and felt that that was a material misrepresentation. And yet he found him credible enough to establish the basis, the factual basis for all of the relief he was seeking. Yes. And then he focuses on this lack of credibility in connection with the denial of discretionary relief. And isn't it just somewhat punitive, the denial of discretionary relief? Isn't it pure punitive? No. I think the immigration court, it's not anomalous to allow consideration under a discretionary prong of a factor that falls short of a mandatory bar. Castro or Ryan held that. And here, Mr. Simonian was not found to fail credibility, but instead the factors applied in the discretionary portion, which is legitimate under the circuit. He drew in what that is that he or she drew in to the consideration of discretionary relief, the fact that the man lied. Yes, sir. And I'm suggesting to you, in spite of the lack of lawyer and all else in this case, that squarely in front of us this adequacy of his exercise or her exercise of discretion. That's here. And we have these rather weak suggestions that he could have sought asylum elsewhere in the world, when, as I recall, all he did was travel through Moscow and wound up in the U.S., right? Through the airport. Yes. That's as much as he touched the soil of any other nation on the way here, right? No, but there were other factors that that is correct, Your Honor. But there were other factors that the Court cited beyond the lying, the no ties to the United States, the fact that he doesn't have to go back to Armenia. Counsel, you do not concede at all that this has an element of punitiveness in it, do you? I do not. The ball-faced lie that he told was what, specifically? That he told the consulate that he wanted to come to the United States as a visitor or whatever and didn't tell them he wanted to come for asylum. Is that it? Yes, but it was more than that. It's that he alleged in the testimony for the questioning of the immigration attorney that he was asked, I mean that he said he'd been arrested in Armenia, and the consular official didn't raise an eyebrow or question him further about that. And then there was also some discussion about whether or not he indicated that he was going to return to Armenia because when you receive a visitor visa from a country like Armenia, the consular affairs official is going to ask you, are you going to return home, sir? He said, I got to return. Yes. So that's the lie. Yes, sir. How many immigrant cases, you do a lot of this work, I take it. No, not at all, sir. I'm one of the overflow attorneys. Well, in the overflow cases that you've had, how many immigrants, how many asylum have you seen where they go to the American consulate and say, I want a visa, and once I get to the United States I'm going to call for asylum? Zero, right? I'm sorry, sir, I'm not the person to answer that question. This is my only case. Well, I've seen a lot of these cases. I haven't seen one yet where a petitioner went to the consulate of the United States in any country, let alone Armenia, and said, I'm going to go to the United States, and once I get there I'm going to ask for asylum. Not one. Well, surely, sir, that shouldn't, even if it's not common practice, it should still count that many people do actually tell the truth to U.S. consular officials, and those people who don't, it ought to weigh in some fashion. There's about one that I've seen that has ever said that I'm going to the United States to seek asylum of, I'll say, a couple hundred cases. Wouldn't get their visa. Well, it would then turn into an asylum interview. Exactly. You never get out of the country that you're trying to get asylum from. Okay. Thank you, counsel. Thank you. Thank you. Thank you, counsel. The government submits. Oh, it can't yet. Can we yet? I'm sorry? We can submit now? Oh, we'll do it. We'll take care of it. Thank you. May I please start? Just a couple of quick follow-up questions. First of all, as far as it being a material misrepresentation, the court specifically, the judge specifically found that it was not material, that it did not go to the heart of the claim. That what was not material? That the inconsistency that he allegedly found on the record was not material. Regarding what he told the? Regarding whether he said he was going to return to. Okay. So then what your view is that the adverse credibility determination was based on the falsehoods in court? I'm sorry. The falsehoods in court. Then what was the basis then for the discretionary denial then? Well, that's a good question. And I honestly think there was no valid basis for the discretionary denial. Because when you look at the record, the inconsistency that the court found is clearly based on his confusion. You don't think the court found inconsistency based on the testimony in court? Well, I think the court seized upon a confusion in his testimony in the court and called it an inconsistency, yes. Thank you very much. Okay. Do you have a question? Totally aside from the issues of counsel, we have squarely before us the issue of whether or not we can review this for an abuse of discretion or the discretionary relief. Right. And whether it measures up to our prior cases. Now, isn't that what you would prefer that we focus on rather than all of the trappings that went on when we look at this case and see this man without a lawyer established the right to all of this various relief and then only failed on the discretion? Now, a lot of lawyers would be satisfied with achieving all of that. And here he achieved that in spite of all else. And now we have before us, according to your brief and everything that's been reviewed, this question of whether he measures up to our case law. My concern for my client is that no positive factors were considered, and he was not allowed to, in particular, the hardship caused by the separation of his family. Okay. And that is why we are here today. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision.
judges: Cowan , Leavy, Rawlinson